Thank you, Your Honors. May it please the Court, Daniel Olivas on behalf of the Applied Underwriters Captive Risk Assurance Company. The papers that we filed, Your Honor, have covered the background pretty well. So I'd only like to focus on these moving parts. The parties had an arbitration agreement that delegated arbitrability questions to the arbitrator. My client, ACRA, we shortened that to ACRA. ACRA moved to compel arbitration and invoked the delegation clause. Minnieland didn't challenge the making of the delegation clause. And in cases where a delegation clause is in play, the United States Supreme Court decision in Rennes Center controls. And under Rennes Center, the district court had one task, and unmistakably delegated arbitrability to the arbitrators. And twice in this case, the district court did that. Neither of those findings have been challenged, and neither of them are at appeal. That question isn't on appeal. So it's our position that under Rennes Center Did the other side even question whether or not there was a delegation clause? No, Your Honor. They did not. They didn't attack it directly? No, Your Honor. And it's our contention that they didn't attack the arbitration clause directly. It is true that in the complaint But I didn't ask you that. No, that's I said on this case. No, no. Because isn't your claim that there's a delegation clause that then makes all these issues to be determined by the arbitrator? That is our argument, Your Honor. That's right. So the analysis should have been over at that point. The district court should have referred the parties to arbitration and Is judicial estoppel a horse of a different color? Should we look at that differently? Or you just say even if that is a challenge to the delegation clause, if that could be a basis to challenge the delegation clause, the delegation clause itself was not challenged here? Well, the latter half of your question is correct. The delegation clause was never challenged here. So getting to the front part of your question, is judicial estoppel a horse of a different color? I'd have to say it is. It's certainly not. We certainly didn't characterize the underlying contract, which was the basis of judicial estoppel in the motion to compel arbitration. So there was never anything for the district court to initially bring to mind judicial estoppel. So yes, it is a horse of a different color. Let me ask you this. I'm not sure there's judicial estoppel in this case on the end determination. Maybe there is. But if you, this is hypothetical, if there was a position that would look like judicial estoppel, they'd take it in front of the master judge in this case or something. Or you had taken it. Do you think the court would look at judicial, this is just a pondering this question, do you think the court would look at judicial estoppel and just go, that's just another issue. It has to be decided. The question of judicial estoppel still must be decided by the arbitrator. And if you think yes, I suspect you're going to say yes. I'm wondering why you think that. Here's what I think. Judicial estoppel obviously is for a court. Estoppel as a defense to arbitration. You take the point of my question. I do. So estoppel as a defense would be a procedural defense in arbitration that the challenging party would raise there. You understand my point. Estoppel is not the same as judicial estoppel. No, I do. Judicial estoppel, I'm not saying it's even at play in this case. I've just been pondering this question in my mind as to whether or not that judicial impact makes any difference in the whole balance of arbitration and judicial determination of issues. Here's why I'm hesitant. I think it's a close question. I see why you're thinking about it. Look, let's go back this way. I think if the party advancing arbitration had put an issue or a factual position in front of the court on the front end, maybe judicial estoppel, that's a close call in my mind. Maybe judicial estoppel has a role there. I don't think that happened in this case. Wait, wait, wait. I'm just exploring that. I don't want to get too far afield from your argument. So the person against whom judicial estoppel would be asserted, they have to put the issue in front of the court. That seems kind of backwards to me, quite frankly. Well, isn't that the way it works, though? One side says something to the court that's actually inaccurate in the eyes of the other side, and they say, stand up, you're lying. No, I thought you said if you'd put something in your motion for arbitration in this case that mentioned judicial estoppel. Oh, no, no, no, no, that's not what I'm saying. I'm saying if you make a factual assertion in front of the court and your opponent's eyes say, hey, that's a lie, I suppose they can stand up and say, Your Honor, at this stage, before you consider the motion for judicial arbitration, we have a judicial estoppel. Why is that the case here? Because we didn't put anything in front of the court. The district court had nothing other than there was an arbitration clause. Well, there was an underlying contract. There was an arbitration clause, and that's it. They came back on the motion to reconsider it and put it in front of the court, didn't they? Yes, they did. But we had never made an assertion. So I think if your instincts are that it doesn't apply in this case, I think your instincts are correct, because there was no factual assertion at all from the party upon whom the judicial estoppel was ultimately visited. So no, it doesn't get there here. Maybe there's a case out there that you can make the case for judicial estoppel before a court decides the arbitration question, but that's not this case. So you say in the initial determination by this court, it had nothing to do with any factual assertions or factual determinations. It was just, they're suing us, here's a contract, delegation clause, it goes to arbitration. That's exactly right. And I think Renner Center says exactly that. And once the court had figured out, as it did twice, that there was clearly and unmistakably a delegation to the arbitrators, it simply needed to go and refer us to arbitration. But it didn't do that. It went on to decide the merits of Miniland's defenses to arbitration, and it did that in two steps. The first step was at the original hearing on the motion to compel, and the court decided that Virginia's insurance statutes regulated the business of insurance and therefore reverse preempted the FAA. Basically, it assumed that there was an insurance contract. Well, at that stage, no, Your Honor, what the court said is, we'll reserve that for the arbitrators, but I'm going to decide what it grafted onto the Renner Center analysis as a first threshold issue, which was, does the Virginia insurance statute, does it regulate the business of insurance and therefore reverse? So what did it reserve for the insurance arbitrator? Well, whether or not the contract fell within the insurance statutes. Isn't that the delegation's provision? Well, the delegation, it's our position, the delegation was both of them. The court had, I don't think the court had any authority to decide whether McCarran-Ferguson reverse preemption applied at all. That's a defense of arbitration. But by the Virginia statute that's been placed there, the 38.2312, why does that not reverse preempt that provision, at least insofar as whether this constitutes an insurance contract? Well, if I understand it, look, an arbitrator may conclude that it does, but that wasn't for the district court. But that's a Virginia code statute that says that you can't have an insurance contract that contains a provision that deprives the state of Virginia jurisdiction. You know, when we look at these cases, every other, well, I should say, most jurisdictions look at this, have looked at this particular arrangement here, and say that really what this is is insurance. And really what's going on here would fall in line with what the district court did. You have a procedural issue here in which substantively the district court has made a determination, but procedurally you say, no, this should be done by the arbitrator because there's a provision here, and the FAA supports it, that he should determine whether or not this is something that's an insurance company and arbitral. Well, and that is true. That is the argument. That is what the FAA— But to take the heart out of what Virginia is all about, Virginia likes to regulate its own insurance contracts. It likes to—it's like if it was done the right way, and that is if it was the workers' compensation insurance, Virginia likes to handle its own insurance just like Nebraska, just like California, just like all the other states. And in this instance, when you do an in-the-round run, it says, no, you've got to go to the Virgin Islands to arbitrate this contract in the instance of whether or not there is a contract. And then if the arbitrator says yes, what happens? What if the arbitrator says it's an insurance contract? Well, then the next determination for the arbitrator would be, does Virginia's insurance laws reverse the FAA, and then it goes back to the district court. If it says it's a Virginia insurance contract, why wouldn't Virginia then determine what it says? Well, Your Honor, there are two parts to what the—look, you are seeing what the district court saw from its chair, but the district court didn't have the authority to do that. Now— The district court, I think, is looking in terms of the preemption of this delegation under the Virginia statute. Does the Virginia statute do a reverse preemption here? That is, essentially says you can't take jurisdiction away from us on contracts of insurance. And whether—whatever you want to call this, looks to me like it's like a risk pool type insurance. It's an odd type of preemption. It looks like, to me, the whole purpose of this scheme here was to avoid the Virginia law, and in essence, the district court said, no, you didn't avoid the Virginia law on this, but this procedural posture, you want to say, because you didn't specifically plead that, or you didn't argue, because there's no pleading, I guess, then you should not be able to come to Virginia. You've got to go to the arbitration. Well, but that's what federal substantive arbitration law allows the parties to do. Renishandra says that. Would it be a different result if the other side had actually used those words that we are challenging also the delegation of authority? I think—well, I think that gets you partway there. I think what you have to do is you have to challenge the making of the arbitration agreement and then the making of the delegation clause on grounds that apply to regular contracts, which they didn't do. You have that. What limits us from deciding issues that are not—I mean, if you broadly state them, we have a lot of cases in which the specifics of which you are seeking to argue here are things the court has the power to look at and say, well, this is really what this means, particularly when we have this Virginia statute 38.2, 312 here, that deals with what looks like a reverse preemption statute. I'm not sure I understand the court's question. Are you— In other words, what—how are we limited from doing this, even though it's not—because we're not dealing with pleadings per se, are we? Well, there is one pleading the complaint. But we're not—in this instance, the issue is not whether it's pled. The issue is once you make a motion to compel, they respond. Is that right? Well, that's the way it works. But if you're asking where does the challenge have to occur, I'd say it's in the pleadings. But here, you make a motion to compel. Right. That comes from you. Yes. And then the response comes to the compelling of arbitration. And so if the—your problem is the response didn't have in it this magical language. Well, I—here's the way I read Renison. How else do you get it in front of the court? I thought that's a pretty easy answer to judge when, isn't it? When would they raise a challenge to the delegation calls? Well, here is what Renisonter says, that it is a pleading—it is almost like a pleading standard to specifically challenge the specific agreement in front of you. But how do they get it in front of the court? Well, they filed the complaint. I suppose what they would say is, having read their contract, they would see that there was an arbitration clause in there and challenge the making of that directly. Well, it's in the contract. But the arbitration doesn't come up until you move to compel it. Well, that's true. I mean, if you don't move to compel it, it doesn't matter what it says. Once you raise that issue of compelling, it's their response. Isn't that the place that you are saying they should have at that point made the argument that, you know, we've got a delegation? No. I don't think that's true, and I don't think Renisonter stands for that principle. I think what Renisonter says is that if you're going to challenge in your pleading, if you're going to challenge the underlying contract as a whole, which they did here, you haven't challenged the delegation clause. You have to specifically challenge the delegation clause. And Renisonter makes clear that that is a pleading-like standard. They didn't do that here, so my argument would be in answer to Judge Wynn, Judge Shedd. So you are saying that Renisonter says it has to be in the complaint. When you come back up here, I want you to read that language to me from Renisonter. It says this has to be in the complaint in the first instance and that this is not done after you make a motion to compel. No. What I'm saying to you, Your Honor, is that Renisonter says it's almost like a pleading. Well, I don't want an almost like a pleading. I want to know where it's supposed to be. Your answer to us, quite frankly, I don't know why you were taking that position, but your answer wasn't anything like it almost had to be in a pleading. You were using interchangeably it had to be in a pleading and a pleading standard. You were using it interchangeably. It wasn't any almost. That's why we asked you, how does it get in front of the court? And you said it had to be in the pleading. It's their pleading. That's what you said. You're picking a fight on that point. I'm not sure really why you are. You think this case is going to return on whether or not they raised in a formal pleading stage they raised the issue in their complaint? You think? No. I think the argument turns on how the district court mishandled this. No, no, no, no. The question is how does the issue get in front of the court? That's the question. And you seem to say it had to be raised in their initial pleading in their complaint. That is where I believe it should come. That's true. Not should, has to come. Well, then on that ground… You want to come back and tell me where Remington tells us it has to be in the complaint because it doesn't seem to follow that. The issue with arbitration arises because you can file a complaint but you have to mention arbitration. And it never comes up until you move to compel it. Then you move to compel, there's a response to it. And your problem here is that in the response they didn't specifically indicate those words there. That leads me to the next question, which is, why can't we affirm on any ground that the record would support and if the record supports a reverse preemption under the Virginia statute, we've done that in other cases. Once we get beyond that initial pleading, that might sound confusing to you, but that's a whole different standard there. And even though the court may say it's like a pleading, in this particular instance it's really not the same as a pleading, it is a response. And the response is to your motion to compel. Well, I understand that. So let's do this. Okay, let me go at it this way. The district court in this case found that wherever the challenge should have been was in the response to the motion to compel. Didn't look at the pleadings. So if I'm wrong on that count, it certainly doesn't affect this record because the district court was looking at the response to the motion to compel. That's where I wanted you to be in the first instance. Well, it seems like now we agree. We can get away from the pleading business and deal with the response. Once you deal with the response of it, then why can't this court affirm if it chooses on any ground that's supported by the record? Well, the record here has this Virginia statute in it. The Virginia statute is 38.212, which is a reverse preemption. Why can't we look at it from that angle? Well, that would be endorsing the error of the district court. But it would put us in line with every other court in this country that has dealt with this particular company who's tempted to do the same thing in other states. Well, let me push back on that. And, of course, it's Virginia that's at odds and the citizens of Virginia that are dealing with it. Let me push back on that. The Third Circuit and the Sixth Circuit both have found or have done what we're asking you to do in this case, have compelled arbitration on the delegation grounds. Those were filed in front of the court. They had a reverse preemption type statute like this one, too, I take it. There was a statute in ñ it was a Nebraska statute. And, ultimately, McCarran-Ferguson would have come into play in those cases. The district court ñ I argued the Miling case. I don't remember the district court coming up, that being in front of the district court. But the Third Circuit said, we're not going to decide all those questions. That's for the arbitrator. That's the law. So if the court ñ this court chooses to say, well, look, you've got reverse. We see the long term. We see down the road. We see where this is going. I still think that would be endorsing the error of the district court. That would be ñ that would fly in the face of Renner Center and other arbitration decisions. And, certainly, it isn't what the Third Circuit or the Sixth Circuit did. I'm afraid my time is ñ I don't want you to answer this, but I want you to think about it. We have pushed you past. With the question of the error in deciding judicial estoppel, is that your argument, that you don't even get to the preemption question, absent that judicial estoppel error, which was made ñ now, you think it's an error of substantive law, but that the district court shouldn't even have considered judicial estoppel. I do. Okay. Thank you. All right. You have to help me a little bit on this. Crine. Crine. Crine. Crine. I tell my children, I've had that name as long as you know they're talking to you. Just respond. Crine. Give me help. I know that. Thank you very much. Mr. Crine. Good morning, Your Honors, and may it please the Court. My name is Scott Crine. I have the privilege of being before you representing Manyland. I'm going to take what I'm prepared to do out of order. The first thing I would like to say, this whole argument about the delegation clause, and was it challenged? Paragraph 33 of the complaint specifically alleged that this contract that they have is a subterfuge to avoid state regulation of insurance, and their patent shows that too. But Paragraph 33 specifically says, the agreement is an attempt to circumvent Virginia's insurance law without limitation, including Paragraph C, 38.2312, which is our provision that says no insurance contract, no policy. It says no contract of insurance for insurance issued in this state may do two things. It cannot have any kind of a clause or any provision that, A, requires it to be interpreted according to any other state law, and, B, requires arbitration. And you've got the insurance commissioner of Virginia who issued that opinion in 1998 and said you must change your contract. You can't have binding arbitration. So if that were the issue, if the issue was when do you challenge this clause, it was done from the complaint. It was certainly done from the opposition to the motion to compel arbitration. You have a very liberal reading. That complaint can come there. It seems to me your complaint has given an overall arching concern to you in terms of Virginia law. But then the motion to compel is made in response to the motion to compel that then brings up this whole business of how you get there because now you have the arbitration agreement squarely before the court. I agree with you, Your Honor, and that would be the Dilbert Services case from this court in 2016 that said that specifically. The point is that if it requires it to be somewhere in the complaint, you assert it was in there. I sort of think, too, looking at this, that it comes up. Because the issue is joined at the motion to compel. I agree. That's when a district court looks at that issue, has a hearing on that issue. If she cares to, that's why it's joined. I agree with you. I agree with both of you. I agree with you. The only reason I even said it, I almost didn't want to speak. But the only reason I brought that up to you. You make your point. I move on to your argument. Then it goes to their argument. They keep saying this broad arbitration clause that you have to challenge the delegation provision in the arbitration clause. The arbitration clause, there's one contract here, one contract. Paragraph 13 is what talks about arbitration. But the court has said that. You have to direct the tax of the delegation clause. Correct, Your Honor. I know I'm correct. Because it's severable, that's the point. The reason I had brought up the issue about when it comes up is because Virginia, our statute, 38.2312, says you may not divest the courts of jurisdiction. Well, that's the delegation. That challenges you. If you delegate anything to the arbitrators, you are violating our public policy. I don't know about that. You could have a court that has jurisdiction and then there's jurisdiction. It decides there's jurisdiction. It refers to case arbitration. That's not divesting of jurisdiction. It has jurisdiction to decide the issue. Yes, it has. And you would say if it says that, then it would trump arbitration. By the way, I'm not the greatest fan of arbitration. I've made that clear. A lot of people seem to love it, and people can certainly contract for it. But I don't think a claim that you may not divest the court of jurisdiction means that there can't be arbitration in that jurisdiction. I don't think that's what it means. Judge Shedd, in this case it does because that statute is in an insurance code. Well, it may be specific. It's specific to this case. That's not what you said you were talking about. It does divest. Oh, then I misspoke. In this case specifically, because of the McCarran-Ferguson Act, all state law. I mean, no federal statute. So you can't have any arbitration in any kind of insurance? In Virginia, you cannot. And there's interesting, when I was preparing the brief, I cited that case to you from, it's a Washington State Supreme Court case. They have exactly the same prohibition that we do in our insurance code. In Virginia, it's by operational law. And it says it's void. It's void. It's not voidable. It's not a matter of enforceability. It's a matter of it doesn't exist. And so the reason, if I said that, Judge Shedd, I mean in this case specifically. And the McCarran-Ferguson Act absolutely preempts the Federal Arbitration Act. And that's the Fabie case and the National Securities case. So McCarran-Ferguson says you, no one, Congress may not pass a law that supersedes state law regarding insurance, unless it specifically involves insurance. And that's what Fabie and National. So you think the district code was just wrong on this determination of arbitration? I do. I do. But however to say that, Your Honor, you should affirm what the district court did. And the district judge had more than sufficient grounds to exercise his discretion to judicially stop them from even arguing this is a contract of reinsurance. The reason they made that, if I can back up again and go to timing here, it's interesting to me. This issue came up from after Applied had argued on their motion to compel. In their rebuttal, they got up and their counsel said, well, this is a contract of reinsurance. That's when this came up. The district court was prepared to rule. And as it may do, you know, the Supreme Court is clear. Do you think they should have said that question along with the arbitrator? No. No, what should they have said? The district court? No, the other side. You said the other side. Oh, they should have argued somehow. I don't know, but they should have argued with the court to say everything must go to the arbitrator. That's what I just said. They did. No, no, no. Well, you said they said this is a contract of reinsurance. I asked you should they have argued on that issue, Your Honor, the arbitrator has to decide. And they did argue that. That's exactly what they said. You must send it to the arbitrator, Your Honor. And the reason that they said that is because – No, but my point is, so what's your point of argument that they made a mistake by saying it's a contract of reinsurance? They – What was their error in doing that? They can argue whatever they want. The court, under straight application of state law, as it did, it interprets the contract and looks at our – I didn't call that, but you were making a point. You said this came up. When they made that argument, I was wondering where did that go? The reason they made that argument, Your Honor, is because reinsurance under our insurance code is not subject to this arbitration. I know why they said it, but you seem to think they made a mistake in doing that. Well, they're wrong. They're wrong in – Okay, then I didn't understand your argument. I'm – On that point. I'm certain I misspoke, Your Honor. What you said was this came up, this issue arose after they got up and argued this is reinsurance. That's correct. I thought that was going to lead to they therefore put that at play, they should have kept their mouths shut. No, the court was prepared to rule in the normal course of activity, interpreting this contract under normal state rules of contract and statutory construction, and the district court had basically had the same conversation you had had with them, and their counsel stood up on rebuttal and said, well, this is a contract of reinsurance, and the court can interpret this contract. It had the authority to do it, and that's what it does. The validity of this contract is at issue because of McCarran-Ferguson, because of our 38.2312, and that's the only reason. So the court has to interpret that contract. So you – So the nuance here is the billing arbitration, and is it agreeable this is controlled in general by the Federal Arbitration Act, not the Virginia Uniform Arbitration Act? Correct. And so when we're looking at the Federal Arbitration Act, and you go back to the Renner Center case and looking at the Ninth Circuit's opinion in dealing with the first of arbitrability, and the Ninth Circuit said, well, that belongs to the arbitrator. So then it says the court underlying can understand and can determine unconscionability, which is the substance of it. And the Supreme Court said, wait a minute, you've got it confused. These are two separate things here. One is the arbitration of the agreement, arbitration of the agreement on unconscionability. Yes. The other is the delegation provision. Correct. And that the court didn't focus on that delegation provision. That's the problem. Your opponent is right here, and he's correct on that aspect of it. Only the way in which this may be nuanced from my perspective is there's the Virginia statute that deals with maybe get back to the McCarran-Ferguson type issue, and that is to bring in that Virginia statute that says 38.2. You didn't say that. So, I mean, this is not specifically what you're arguing, because you didn't bring it from this perspective. But it is something the court can, when I say you didn't say it, you didn't bring it up in response to it. But the courts can affirm on anything within the record. We have cases like that. Yes, sir. We don't have to. No. We don't have to. So it can go either way on this. And I'm not saying we're going that way. I'm just opening it up to say how this discussion can be informed by looking at the Virginia statute here from the perspective when you look at the McCarran-Ferguson and the purpose of it. But it is the FAA that controls, and you have the Supreme Court's case in Renison, and there have been other circuits that looked at this too. Yes. Some have gone against you, and they've had the same kind of situation here. So that's the posture of where we are now. And the question is, is this delegation provision that you didn't respond, even if you did the response to the motion to compel. That's the problem. We've got to deal with that first. Your Honor, I believe that Miniland directly and unequivocally responded to that issue. The delegation clause is embedded in paragraph 13, and the immediate response from Miniland was there is no valid delegation clause. Why? Because McCarran-Ferguson preempts the FAA. That's the Supreme Court's Fabee case and the national security case. It says that specifically, McCarran-Ferguson reverse preempts the FAA, the Federal Arbitration Act. And our insurance statute says you may have no contract, not no policy. You may have no contract of insurance. When you say McCarran-Ferguson, this is where it gets confusing. You said reverse. So I'm looking at Virginia statute for the first time. And I'm thinking arbitrability if the contract goes to the arbitrator. And that's what the FAA says. And I'm not sure that's covered by McCarran-Ferguson nakedly without Virginia statute being there. Oh, absolutely. Oh, absolutely. Because McCarran-Ferguson says state statutes regulating the business agreement. Oh, absolutely. I thought you were saying generally McCarran-Ferguson. This happens to me with my wife all the time. She tells me we're agreeing. Absolutely, Your Honor. But were this not an insurance contract, of course our statute 38.2312 would not apply. It's McCarran-Ferguson that gives the preemptive effect to our statute 38.2312. Isn't that an argument to be made to and decided by the arbitrator? It could be. No, it can't because to do that, Your Honor, you would be undermining the federal public policy of the McCarran-Ferguson Act. Why can't he decide that or she decide that? Isn't that a way to reconcile? If there is a problem, why isn't that a way to reconcile? There's arbitration under the arbitration clause. We could say you're making good arguments. Go make them to the arbitrator. And the arbitrator may say, you know what, you're exactly right. I refuse to arbitrate this because the law doesn't allow me to. Think about that, Judge Shedd. If that happened, let's say that Manyland was forced to go arbitrate. Right. And the arbitrator came back and said, I find that this is an insurance contract and it's invalid. In basis, I just don't have the right to hear this. Then what we would have done as a court, we would have violated the McCarran-Ferguson Act by giving any kind of ---- No, but you would have done that. Sometimes policies on the argument, sometimes concepts and purposes are at odds. It happens all the time. We have balance. We have any number of tests that balance things. We do that all the time. If it wasn't balanced, you could just look at a tally sheet and you wouldn't need the edges and we wouldn't want that to happen. And so what you do is you just say, looking at the guidance from the Supreme Court, it goes to the arbitrator and the arbitrator, however, may entertain that argument. That's right, Your Honor. But it's the FABI, the Supreme Court cases in FABI, National Security, specifically say McCarran, in a sense, McCarran-Ferguson trumps the Federal Arbitration Act. It says that specifically because the Federal Arbitration Act is not a statute that concerns insurance. And so in those two Supreme Court cases say that specifically. So if we have an insurance statute, in this case, our statute, 38.2312, which prohibits arbitration, prohibits the interpretation of any contract of insurance. So you don't need the state statute? You have to have the state statute. If our statute, if 38.2 said any insurance contract may require binding arbitration, we wouldn't be here today. We'd have to go to arbitration. You said there was a public policy within McCarran-Ferguson, McCarran-Ferguson against arbitration. No, no. What did you just say to Judge Wynn? You said there was something specific in it, a substantive policy provision is what you said. Virginia's public policy. No, not Virginia, McCarran-Ferguson. McCarran-Ferguson is the Federal. I know what it is. It is the Federal policy that says any state statute that concerns the business of insurance has to be, is the law, is the law any place, any state statute. So there's no substantive policy in McCarran-Ferguson? Regarding arbitration, no, no. If I had said that, I'd complete it. Mr. Kriner, your position is that you can, by a visual test, tell whether or not basically it is a contract of insurance, correct? Yes. I think that is the court through strict statutory and contract. And you also take the position that if it is reinsurance, it would not be under the reverse preemption, correct? That's true because under our insurance statute. The next question is this, then. Are you saying that you can look at this visually and know it's not reinsurance? Yes. And the court did that. I mean, the court, until they, absolutely. You look at our statute that defines a contract of insurance, not a policy, a contract of insurance, and absolutely the court did that. And the only thing I would say about this issue of judicial estoppel, I think that the court had more than adequate discretion to do what it did. And the only statement that this is not a contract of insurance to try and get around it and say it's a contract regarding reinsurance, your Honor, that's where all this comes in play. They barred from selling this product in Wisconsin, barred from selling it in Vermont, said that it wasn't reinsurance in California, relied upon by the Luxor courts because their counsel said it's not reinsurance. So I think that there was more than that. But you don't need to approve his exercise of judicial estoppel. You can absolutely say that he had the authority and the responsibility to determine the validity of this contract. And because of our statute, it can't possibly be found. So you think we could say he was wrong, or we don't need to address his judicial estoppel, we just need to correct him on the arbitration point, which he was wrong on. Correct. Candidly. But I believe the district court had more than adequate discretion to say you cannot have your cake and eat it too. That sounds more like a reversal, doesn't it? Well, no, it's an affirmance on other grounds. It truly is. I know, but with the way he considered it. Usually that affirmance on other grounds is you affirmed it for X, and you were wrong on that, on the substance. But we see another grounds on which you could do it. Instead of how he did it, he was right on one and wrong on one. And that could be, because it could be I take responsibility. Clearly, I'm not the clearest person to talk to, as this has demonstrated. And I could have been more clear. The issue is it's a very set place. McCarran Ferguson gives that statute operative authority. There's no issue about it. And the argument about all these Supreme Court, under the FAA, about here's what applied underwriters want you to rule. They want you to rule if there's a written contract that has an arbitration clause in it, you must send it to arbitration. And that is not the law. No, no, no. They'd say you have to attack the contract provision formation of the delegation clause. I think that's correct. That's correct. They'd have to say that. Because you have to do that. They have to go to the validity. And our statute, by definition, says it's void. So you never get to the question. No, no. If you write an application to that statute and it says void, then I think you make a strong point. And that's exactly what it says, Your Honor. And the other thing, really, the Dilbert Services case, Judge Wilkerson, I don't mean to praise him, but that pretty much lays it out. And it's the Granite Rock case. Justice Thomas gave us the handbook on how to interpret arbitration cases. But they make this argument about, oh, well, there's a clear and unmistakable, and the district court mentioned this, too, in its first order, that there's a clear and unmistakable language to arbitration. That language, Your Honor, the Supreme Court cases are clear. You don't get to that until you decide there's a valid contract. And because our statute says the arbitration and the Dilbert, which is the same thing, that arbitration provision is void. It never existed. So there's nothing to even look. Is there a clear and unmistakable language about what is going to be arbitrated? You never get to that. You always have to look at the validity of the statute. And because 38.2312 says it's void, there is nothing there to look at. Anything further? No, thank you, Your Honor. Thank you. All right. All right. Mr. Leibovitz, you have time reserved. Thank you, Your Honor. I want to come up and revisit Judge Wynn's request that we talked about, the pleading standard point I made at Varenda Center. And I think I'm going to walk that back because what I think I have overread what it says. It says that the pre-paint rule is akin to a pleading standard. And so I took pleading to mean pleading. It's akin to a pleading standard. You actually said that in your argument. You used those words, but you just argued it as something different. I agree. We were talking about the Rent-A-Center case. That is correct, Your Honor, and that's in the dissent. Isn't it somewhat different when we deal with the Rent-A-Center case? The case, I guess, is Rent-A-Center and Jackson. It's not about insurance, is it? It is not, Your Honor. It's an employment contract. And you don't. And the issue that seems to be coming up here is, you know, in getting to this kind of issue is reverse preemption, which don't have that kind of statute. I know it's in play in the Rent-A-Center case. Is it? It is not. There isn't. But, look, the reverse preemption, you would only get to the reverse preemption in this case if the contract falls under the insurance statutes to begin with. So you have to interpret the contract as a whole, which Rent-A-Center and PrimaPaint say, if you are challenging the contract as a whole, which they did in the complaint in this case, then that goes, by operation of PrimaPaint and Rent-A-Center, immediately to the arbitrators. The district – so, really, the argument isn't over whether there's reverse preemption or – It's a question of who gets to decide. It's who. It's the question of who. And the Virginia statutes set out no procedural framework for deciding who. So even if the court was interested in whether or not the district court was on to something with its Rent-A-Center – I mean, with its McCarran-Ferguson analysis, there's no possibility of McCarran-Ferguson reverse preemption because the FAA wouldn't impair or invalidate or supersede any Virginia insurance statute on the question of who gets to decide. That analytical construction would undermine the whole idea of Virginia's law that prohibits arbitration clause in insurance contracts. So what you're saying is that every contract has to be, oh, first we have to look and see whether it's valid or not. We go through all that process. And then, oh, there's a provision right here of delegation. Now, I guess all that would go before the arbitrator under your theory, your analysis first, the broad case. Once the case turned on the motion to enforce arbitration, as the judge said, the issue is joined in that sense. We're zoned in on the preemptive part of it, and that is it has a delegation for arbitration. Unless you're saying that that can't be determined by the nature of the contract itself, I guess that's another question. Well, I don't. You don't think you could look at this contract and say it's insurance? Well, what I think you have to do is you'd have to analyze the contract. You'd have to construe the contract and then construe the statute and apply it to it. Well, you're known to do that whether or not a contract is of insurance. What's the objective of it? Is that on his face? You can see the objective of the contract. In other words, I have a contract to paint my house. I don't have to see whether or not, you know, all this about meeting the minds and formation to determine what the objective is. The objective is to paint my house. Is this objective to insure something? Is it? No. I think it says it's an investment product. But we're back to the question of who. And Brenner Center says that who? You've just taken your claim that in the first instance, any and all of these questions have to be decided by the arbitrator. In this case? Well, that's the only case we have is this. Well, what I mean where there's a delegation of arbitrability. That is this case. That is this case. You're correct. That's what we're asking about. That's correct. Do you say that the arbitrator can entertain any and every argument that has been made in front of the district court or that's being made to us today? Can he entertain any and all of those arguments? Yes. What if he decides it is preempted? Then we'd lose and we'd be back in the district court. So your claim is just that where you started, kind of got lost on the pleading stuff a little bit, but the point is you think all of it, I take it, given it the best light, you think all of this, you don't think it's going to be resolved that way, but you think all these discussions we've been having, they all may present substantial questions, and you think you're going to win with those substantial questions, but you just think all of that has first been decided by the arbitrator, that the arbitrator gets first cut at this. That's correct. Would there be any, and why is that? Because there's a dispute as to whether or not what this contract is. Well, sure, that would be the arbitrability argument, and we've delegated those questions to the arbitrator. What if the arbitrator said, this is a contract of insurance, but I'm going to still decide? Well, let me say, let me append to that. Oh, you're going to change my hypothetical? Well, only to this extent that presumably then the next question would be, from Minuland's behalf, is it's reverse preemptive. Let's try it in order. My hypothetical, then you can add on after that. Okay. What if the arbitrator looked at it and said, yes, this is a contract of insurance, but I'm still going to arbitrate and decide those issues delegated to me? Well, then that's where we would be. We would next then decide, your hypothetical would put us right, arguing the merits of the underlying accounting dispute. Before the arbitrator? Before the arbitrator. So Virginia would have to just stand silent and say, well, our laws are just brushed aside, right? I'm a Virginian. That's why I said our. Look, Minuland would have recourse. No, no, no. Why don't you just answer that question? Well, whether Virginia would stand by it. In the answer, that if it goes to arbitration, arbitration, the award would be subject to challenges, like any arbitration determination is. Yes, and that was what I was about to say. Under 10A, he could generally have trouble getting there. Okay. Well, then I thought the whole idea of arbitration is that we give them an incredible, absolute, awesome deference to it. Because we say, look, if you decide to arbitrate, don't come crying to us, the court, now. You'd be in an awful position, wouldn't you? Judge Shea was giving you some suggestions there. Would you be in a court of law to challenge him? Yes, you would. Wouldn't it be very difficult to overturn that, what you have given to arbitration? Yeah, it would be very difficult. Very difficult then to further what Virginia is determined to be a public policy issue. Virginia is a very fulsome set of regulations, a commission on insurance, and they take it very jealously as to that authority. Is an error of law a basis not to enforce an arbitration award or to challenge an arbitration award? I don't know if it is in the Fourth Circuit. Manifest disregard of the law is in the Sixth Circuit. I think you might be confined to Section 10, which was exceeding your authority. Yeah, but being wrong is not. No, it's not. Wrong is two left shoes or what have you, and then on the idea that, yes, it's an insurance contract, I'm going to decide it, that's an error of law. It has to be, just like you said, you said it well, beyond the authority. Right now you're saying that they would have that authority to look at that. Well, it would be in their ballpark, that's true. And so who would be responsible for that? I mean, why would we find ourselves in that position that an arbitrator deciding an agreement or something about a contract can be wrong? Who made that determination? Well, in general, I think Judge Gregory found it out. If you agree to arbitrate, which they did in this case, you bargain for what you get. Federal Arbitration Act. Isn't that right? Don't they set the standard of review? Right. Now we're asked, so back to who's – I'm not sure I understood the last part. Well, the point is, if you don't like the review of an arbitrator's award, and I think I've already said a lot, I'm no great fan of it, like a lot of people seem to be, because, for one thing, there's such a limited review of what the arbitrator does. An arbitrator can make mistakes. Sometimes you can't really – sometimes you can't correct as a court. But isn't that a determination made by Congress? Well, to enforce them on the footing of regular contracts is true, but as Judge Gregory has pointed out, let the buyer beware about arbitration contracts, I suppose. Thank you, Your Honor. Thank you so much. We'll come down, greet counsel, and proceed to our next case.
judges: Roger L. Gregory, Dennis W. Shedd, James A. Wynn, Jr.